PASCIESZNY v. BOYDELL BROS. WHITE LEAD & COLOR CO.

1. CARRIERS—PASSENGERS—ELEVATORS—LANDLORD AND TENANT—CARE REQUIRED IN OPERATION OF ELEVATOR.
   In an action against the owner of a building, by the servant of a tenant, for personal injuries, caused by the alleged negligent operation of the passenger elevator in the building, instructions relative to the degree of care required of the landlord in the operation of the elevator examined in connection with the evidence, and *held*, as favorable to defendant as it was entitled to.

2. EXAMINATION OF WITNESSES—HARMLESS ERROR.
   Where, at the time of sustaining an objection to a question put to plaintiff on cross-examination, the court said that the matter might become material at a later stage of the case,

and, on the witness being recalled, defendant did not renew the question, the rejection of the question cannot be regarded as reversible error.

3. CARRIERS—PASSENGERS — LANDLORD AND TENANT — ELEVATORS —NEGLIGENCE—ACTION—EVIDENCE—EFFECT.

In an action against the owner of a building for injury to the servant of a tenant, plaintiff claimed that the door of the elevator shaft was negligently left open when the elevator was not there, and that he was deceived thereby and fell down the shaft, while defendant claimed that plaintiff opened the door himself, supposing the elevator was there, and produced evidence tending to show that plaintiff had on prior occasions so opened the door. *Held,* that an instruction that evidence of plaintiff's prior acts in opening the door could be considered only as impeaching him, he having denied knowledge of the manner of opening the door, was too restrictive, such evidence being also competent to support an inference that he opened the door on the occasion of the accident.[1]

Error to Wayne; Rohnert, J. Submitted October 5, 1906. (Docket No. 12.) Decided October 29, 1906.

Case by John Pascieszny against Boydell Brothers White Lead & Color Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Reversed.

*Wilkinson, Post & Oxtoby* (*Clarence A. Lightner,* of counsel), for appellant.

*Dohany & Dohany,* for appellee.

MOORE, J. The defendant is the owner of an eight-story building which was leased to various tenants, among whom, in July, 1904, was the firm for whom the plaintiff, John Pascieszny, worked. About 20 minutes before 7 o'clock in the morning of July 20, 1904, plaintiff was injured by falling through the door of the caging surrounding the passenger elevator on the ground floor, into the basement, receiving severe injuries. The pas-

---

[1] As to liability for injury to elevator passenger, see note to *Edwards* v. *Manufacturers' Building Co.* (R. I.), 2 L. R. A. (N. S.) 744.

senger elevator is situated on the westerly side of the building at the end of a long hallway, which was dimly lighted, extending along the westerly side of the building from Fort street. The hallway is of an even width for a little more than half of the distance from the outside door to the passenger elevator, when it gradually widens as the elevator is approached. The passenger elevator is located between two brick fire walls. The stairway running to the upper floors of the building, as well as the freight elevator, is likewise located between these fire walls. In order to reach the elevator and the stairs, it is necessary to pass through a door in the first fire wall, which door was kept open, it being equipped with a fusible link so as to close automatically in case of fire. There is also a doorway in the second fire wall to the left of the elevator opposite the doorway in the first fire wall, equipped with fire doors. The door of the passenger elevator is opened from the inside by throwing a gravity catch. The passenger elevator is surrounded by a wire inclosure which extends from the basement to the top floor. When the outer fire door in the rear fire wall is closed there is a one-inch space between the elevator caging and the fire wall. When the fire door is swung back there is an additional space of 2¾ inches. By pulling the fire door back a man could reach around inside of the wire inclosure, a distance of 7¾ inches, and unlock the cage door by pushing the catch back.

The claim of plaintiff is stated in his declaration as follows: He averred that, on the morning of July 20, 1904, about 6:40 o'clock, he entered the corridor wheeling his bicycle at his right side, which bicycle he intended putting in position in front of the door leading into the elevator, so that, as soon as the elevator was ready to ascend to the eighth floor, he could put his bicycle in. That in order to put his bicycle in proper position to enable him to readily place it in the elevator, it was necessary for him to place the front wheel at, near, or against, the closed door leading into the elevator, and then to raise

the rear wheel of his bicycle about 2½ feet above the floor, so as to put it around the post of the banister of the staircase coming down into the hallway opposite the elevator. That he had always previously found the elevator door closed; that on the morning in question the hallway was so dark that he could not see whether or not the elevator was at the ground floor or whether the elevator was open or closed. That while in the act of elevating the rear wheel of his bicycle past the banister post, and while he had the front wheel of his bicycle near the elevator entrance, he stood with his back close to the elevator door, and suddenly pitched through the open door of the elevator shaft, together with his bicycle, downward and head-foremost upon the hard cement bottom of the elevator shaft, a distance of 16 feet. On the trial testimony was given tending to sustain the claim thus stated.

Defendant's theory was that plaintiff himself opened the elevator door on the morning in question, by pulling back the fire door, putting his arm around the wire caging into the elevator and lifting the door latch; that the light in the hallway was poor, and coming into the corridor from the outside daylight plaintiff could not see clearly, and did not notice when he opened the elevator door that the elevator was at an upper floor, and when he attempted to enter, with his bicycle, what he supposed to be the elevator car, he fell into the basement, and was injured. The case was submitted to the jury which returned a large verdict in favor of plaintiff. A motion was made for a new trial, which motion was overruled. The case is brought here by writ of error.

Counsel for appellant say in their brief that eight questions are involved at this hearing. We think those that are important are embraced in the following claims of counsel:

"1. Evidence that plaintiff knew how to open the elevator door was competent not only for purposes of impeachment, but also for the purpose of proving that plaintiff knew how to open the door, his knowledge being a link

in the chain of circumstances tending to show that he opened the elevator door himself, as claimed by the defendant.

"2. Defendant's counsel was entitled to fully cross-examine the plaintiff when on the stand as a witness in his own behalf as to his knowledge of how to open the elevator door from the outside.

"3. The defendant as the owner of a passenger elevator was not a common carrier with the liabilities of such, and the court should have charged the jury to that effect as requested by the defendant."

We will deal with these questions in the inverse order.

The court charged the jury, in relation to the last of them, in part as follows:

"If the plaintiff entered the corridor or hallway in question, on the invitation of the defendant, it became the duty of the defendant to use reasonable care and diligence, the care of an ordinarily prudent person, under the circumstances, to guard the plaintiff against injuries from any danger that existed in the corridor, or hallway. It became the duty of the plaintiff to use reasonable care and diligence to guard himself from injury, and from any danger that he knew of, or had reasonable ground to expect, and it was the duty of the defendant to use the care of an ordinarily prudent person, under the circumstances, to guard the plaintiff against injuries from any danger that existed in the corridor or hallway, when those dangers were within the knowledge of the defendant, or had existed for a sufficient length of time to make want of knowledge on the part of the defendant improbable. * * *

"Just what constitutes care and diligence that an ordinarily prudent person would exercise depends entirely upon the circumstances of the case. Under certain circumstances, an ordinarily prudent person would exercise a very high degree of care, while, under other circumstances, an ordinarily prudent person would exercise a lesser degree of care, so it is for you to say, under all the circumstances in this case, considering the amount of light that there was in this hallway, or corridor, at the time the plaintiff entered it, and all the other circumstances as you find them, just how high a degree of care an ordinarily prudent person would exercise. * * *

"If you find from the evidence, that the defendant, in the care and operation of the elevator in question, exer-

cised that reasonable care which an ordinarily prudent person would exercise under similar circumstances, then defendant was not guilty of negligence, and your verdict will be for defendant."

We think this was quite as favorable a charge as defendant was entitled to.

As to the second question. Defendant had cross-examined plaintiff at considerable length. The witness had testified that he did not know that any one but the person in charge of the elevator could open it, that he did not know that by opening the fire door first that one could reach inside and open the elevator door, and denied he had ever tried to do so, and denied that he had ever opened the door, when the following occurred:

"*Q.* Don't you know that the day watchman has gone to that elevator door at noon, and has found you sitting in that elevator cage? (This was objected to by plaintiff's counsel as immaterial and irrelevant, and as having no connection with the issue.)

"*The Court:* For the purpose of showing one incident in a chain of incidents from which the jury might conclude that he opened the door. Of course, I do not know what the other incidents are. It may be at this stage of the case it is improper because it may be necessary that other incidents or circumstances should be shown to connect up the chain of circumstances from which the conclusions might be drawn.

"*Mr. Dohany:* I ask that it be deferred until there is some testimony upon which they can base such questions.

"*The Court:* I don't know that the jury can draw a conclusion that he did open the door from the fact that he knew how.

"*Mr. Dohany:* I ask that your honor hold the matter and that the examination be postponed at the present time.

"*The Court:* I will exclude it for the present time without prejudice to your renewing it, Mr. Lightner, at some later time in the case.

"*Mr. Lightner:* If I am entitled to it, I am certainly entitled to it on cross-examination. (Exception for defendant.)"

Later the plaintiff was again asked:

" *Q.* Do you remember that the Monday before you were hurt you opened the elevator door before Porth, the watchman, got there, and put your bicycle in the elevator cage on the ground floor? (Objected to as immaterial and incompetent.)

" *The Court:* I will exclude it for the time being.

" *Mr. Lightner:* I desire an exception. I can't see when this will be competent if it is not competent on cross-examination of this man. If I can't ask him about it, I can't introduce testimony to prove it.

" *The Court:* My ruling will stand without prejudice to your renewing the question hereafter.

" *Mr. Lightner:* Do I understand that I should at some future stage recall this witness, and it may be admissible then?

" *The Court:* It may be. Note an exception."

Afterwards the plaintiff was recalled, but counsel did not renew the question. We cannot say what occurred as to this phase of the case was reversible error.

We now come to the first question, which is one presenting more difficulties. The court permitted the defendant to put in what proof it could that plaintiff knew how to open the elevator door. A number of witnesses gave testimony tending to show that plaintiff knew how to open the door, and had opened it. As to the effect of this testimony, the jury were charged as follows:

"All of the testimony given by the witnesses showing that the plaintiff had at any time prior to July 20, 1904, opened the elevator door on the ground floor by means of putting his hands around the iron grating or into the elevator cage is immaterial and irrelevant, and in no way tends to prove or to disprove negligence on the part of defendant, nor prove or disprove contributory negligence on the part of the plaintiff; that is, I charge you that it is immaterial and irrelevant in attempting to show any negligence on the part of the plaintiff. But it may be considered by you in its bearing upon your determination of the question whether or not the plaintiff was telling the truth when he said he had no knowledge how to open the door. While you may not conclude from the fact that he opened the door on prior occasions that he opened it on this occasion, still he having testified that he had no knowledge how to open the door, if you find from the

testimony of other witnesses that he did have knowledge how to open the door, it would tend to impeach his testimony on that point.   So, I say that you may consider the fact that he did, on prior occasions, open the door; if you find that he did open the door, you may consider that fact as bearing upon whether he told the truth or not when he said he did not know how to open the door.   But for no other purpose."

We think this charge was too restrictive.   The jury might very properly reason that, if the plaintiff was untruthful in his testimony as to knowing how to open the door, he was also untruthful when he testified upon the much more important question of whether he did open the door at the time he was injured.   They should have been allowed to use the testimony for that purpose, and for the further purpose of supporting an inference that he did in fact open the door on the occasion in question.

We think there was a case for the jury, and that the learned judge did not abuse his discretion in refusing a new trial upon the claim that there was no case for the jury.

For the reason stated, the judgment is reversed, and a new trial ordered.

CARPENTER, C. J., and MCALVAY, OSTRANDER, and HOOKER, JJ., concurred.